**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MOHAMMAD A. MALIK, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>v.<br><br>LONGFIN CORP., VENKATA S. MEENAVALLI, and VIVEK KUMAR RATAKONDA,<br><br>                 Defendants. | C.A. No. 1:18-cv-4953<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Mohammad A. Malik ("Plaintiff"), individually and on behalf of all other individuals and entities similarly situated, by his undersigned attorneys, alleges the following, based upon knowledge with respect to himself and his own acts, and upon facts and information obtained through an investigation conducted by his counsel, which included, *inter alia*: a review of documents filed with the United States Securities and Exchange Commission ("SEC") by Longfin Corp. ("Longfin" or the "Company"), securities analyst reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, as well as belief based upon such facts and information. Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.     This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Longfin's publicly traded securities (the "Class") between December 15, 2017

and April 6, 2018, inclusive (the "Class Period"), seeking remedies under the Securities Exchange

Act of 1934 (the "Exchange Act").

2.     This action is brought on behalf of the Class, against Longfin, Venkata S.

Meenavalli ("Meenavalli"), and Vivek Kumar Ratakonda ("Ratakonda," together with Meenavalli,

the "Individual Defendants," and collectively with Longfin, "Defendants") for their violations of

Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5

promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

3.     Longfin purports to be a finance and technology company that specializes in

structured trade finance and physical commodities finance solutions.  The Company also purports

to provide blockchain technology solutions for a variety of businesses.

4.     Longfin is headquartered in New York, New York, and the Company's securities

were traded under the ticker symbol "LFIN" on the NASDAQ Capital Market ("NASDAQ") until

the stock's trading was halted on April 6, 2018.  The Company's stock resumed trading on the

Over the Counter Market (the "OTC") on May 24, 2018.

5.     The  Company  made  materially  false  and/or  misleading  statements,

misrepresenting, *inter alia*, its involvement with blockchain technologies, qualifications of key

employees, material weaknesses in its internal controls over financial reporting and operations,

and the fact that the Company was ineligible for inclusion in the FTSE Russell ("Russell") indices.

6.      On March 26, 2018, *Citron Research* ("Citron"), a market commentator, submitted

a post via its Twitter account accusing the Company of inaccuracies in its financial reporting and

fraud.  The same day, Russell issued a statement announcing that Longfin would be removed from

its global indices after market close on March 28, 2018, approximately 12 days after being added.

7.     On March 27, 2018, *CNBC* published an article entitled "Longfin loses more than a third of its value after the controversial cryptocurrency stock is booted from the Russell 2000 index."

8.     On April 2, 2018, Longfin filed its annual report on Form 10-K for the Company's 2017 fiscal year (the "2017 10-K").  The 2017 10-K revealed that Longfin was the subject of an SEC investigation (which led to a Court-imposed freeze on $27 million in illicit trading proceeds), suffered from a multitude of material weaknesses in its internal controls over financial reporting, and may not be able to continue as a going concern.

9.     On April 6, 2018, trading of Longfin's stock was halted on the NASDAQ.  On May 14, 2018, Longfin voluntarily delisted its stock from the NASDAQ by filing a Form 25 with the SEC.  On May 24, 2018, Longfin's stock was officially delisted from the NASDAQ.  The same day, Longfin stock began trading on the OTC, with an opening price of $5.05.

10.     The foregoing events caused the price of Longfin's stock to decline $66.05, or 92.89%, from March 23, 2018, to May 24, 2018 -- the date in which the stock became a tradeable asset again.

11.     As a result of Defendants' fraudulent conduct alleged herein, Plaintiff and the Class invested in Longfin securities and suffered significant financial harm.

## JURISDICTION AND VENUE

12.     The federal law claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. §78aa.  In connection with the acts, conduct,

and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the U.S. mails, interstate telephone communications, and the facilities of the NASDAQ (a national securities exchange located in this District).

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

**PARTIES**

15.     Plaintiff purchased 60,000 shares of Longfin stock during the Class Period, and suffered financial harm as a result thereof.  Plaintiff's purchases are set forth in his certification attached hereto as Exhibit 1.

16.     Longfin is incorporated in Delaware and maintains its principal executive offices at 16-017, 85 Broad Street, New York, New York 10004.  Longfin's stock trades on the OTC under the ticker symbol "LFIN."

17.     Meenavalli has served as Longfin's Chief Executive Officer ("CEO") and Chairman of the Board at all relevant times.

18.     Ratakonda has served as Longfin's Chief Financial Officer ("CFO") at all relevant times.

19.     Each of the Individual Defendants: (i) directly participated in the management of the Company; (ii) was directly involved in the day-to-day operations of the Company at the highest levels; (iii) was directly or indirectly involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements alleged herein; (iv) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the

Company; and/or (v) approved or ratified these statements in violation of the federal securities laws.

20.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Longfin's business, operations, operational trends, financial statements, markets, and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts, and reports of actual operations and performance), conversations and connections with other corporate officers and employees, and attendance at management and Board meetings and committees thereof and review of reports and other information provided to them in connection therewith.

21.     As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws, the Individual Defendants each had a duty to disseminate prompt, accurate ,and truthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, markets, management, earnings, and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

22.     Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Longfin's securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Longfin's business, operations, and

management, and the intrinsic value of Longfin securities; and (ii) caused Plaintiff and other shareholders to purchase Longfin securities at artificially inflated prices.

## CONTROL PERSON ALLEGATIONS

23.     By reason of the Individual Defendants' positions with the Company as executive officers, the Individual Defendants possessed the power and authority to control the contents of Longfin's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors; *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company and access to material, non-public information available to them but not the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

24.     Longfin is a finance and technology company that purports to specialize in structured trade finance and physical commodities finance solutions.  The Company also claims to provide blockchain technology solutions for a variety of businesses.

### Material Misstatements and Omissions during the Class Period

25.     The Class Period begins on December 15, 2017, the date on which Longfin issued a press release entitled "Longfin Corp acquires Blockchain empowered Global Micro-lending solutions provider Ziddu.com."  This press release stated, in relevant part:

> New York, NY (December 14, 2017) - Longfin Corp. (LFIN:Nasdaq) announces the acquisition of Ziddu.com, a Blockchain technology empowered solutions

provider that offers Microfinance Lending against Collateralized Warehouse Receipts in the form of Warehouse Coins to small and medium enterprises (SMEs), processors, manufacturers, importers and exporters using crypto currencies across continents.

Ziddu Warehouse Coin is a smart contract that enables Importers and Exporters to use their Ziddu coins that are loosely pegged to Ethereum and Bitcoin Crypto Currency. The Importers/Exporters convert offered Ziddu coins into Ethereum and Bitcoin Cryptocurrencies and use the proceeds for their working capital needs.

\*\*\*

"The advent of Blockchain technology has caught the imagination of the global financial services industry; blockchain is emerging as a technological revolution that we believe is set to disrupt the financial services infrastructure. Crypto currencies such as Bitcoin and Ethereum are expected to act as a global financing currency to avail credit against hard currencies of many emerging markets." Says Venkat Meenavalli, Chairman of Longfin Corp.

Ziddu intends to use blockchain technology to transform the lives of millions of SME's by providing finance by way of Ziddu coins and through Crypto Currencies such as Ethereum and Bitcoin against their collateralized warehouse receipts. At the end of the contract, Importers/Exporters are expected to realize their proceeds and pay back their funds through Crypto Currencies only. Depending upon the risk profile of the counterparty, the interest will vary between 12% to 48%.

26.     In the days following this announcement, Longfin's stock increased from $5.39 per share on December 14, 2017, to close at $72.37 per share on December 18, 2017, representing an increase of more than 1,200% in just two trading days.

27.     On January 23, 2018, Longfin issued a press release entitled "Multibillion Dollar Fund to Invest $52.7 million into Longfin Corp."  This press release stated, in relevant part:

Longfin Corp. ("Longfin" or the "Company") (NASDAQ: LFIN) a leading global FinTech company, has announced that the Company has entered into a securities purchase agreement with a multibillion dollar fund. The institutional investor is investing $52,700,000 through convertible note instruments (the "Notes"). A press release regarding the transaction was previously issued prior to finalization of the documentation earlier today, and the Company is confirming the transaction is proceeding on the terms indicated below.

Joseph Gunnar & Co., LLC is acting as placement agent.

\*\*\*

7

**Key Transaction Details**

The Notes consist of (i) Series A Senior Convertible Notes in the aggregate principal amount of $10,095,941.18 and (ii) Series B Senior Secured Convertible Notes in the aggregate principal amount of $42,604,058.82. The nature of the investment will involve (i) an upfront cash payment in the amount of $5,000,000, and (ii) secured promissory notes payable by the investors to the Company in the aggregate principal amount of $42,604,058.82 (referred to below as the "Investor Notes"). Under the Investor Notes, the Investors are required to prepay the Investor Notes to the Company in two equal installments following the registration of all of the shares underlying the Investor Notes and warrants issued together with the Investor Notes.

Longfin is one of the few players in the global FinTech space in alternative finance and shadow banking, a $72 trillion industry worldwide.

***"To secure funding from this large institutional investor at current market valuation will enhance the visibility and revenue growth of the company in a rapid way. We are confident in our goal of reaching a 250% revenue growth rate organically, and outnumbering our growth rate in 2017. This funding will also help Longfin in its acquisition endeavors within the Blockchain powered Smart Contracts and FinTech space across the globe," stated Venkat S. Meenavalli, Chairman and CEO of Longfin Corp.***

(Emphasis added).

28.     Effective March 16, 2018, Longfin was added to the Russell indices as part of Russell's quarterly addition of companies with recent initial public offerings.  This addition significantly increased investor demand for Longfin securities.

29.     On March 22, 2018, Longfin issued a press release entitled "Longfin Corp. Joins Russell 2000® Index and Russell 3000® Index." The press release stated, in relevant part:

Longfin Corp. ("Longfin" or the "Company") (LFIN), a global FinTech company, has announced that it has been added to the Russell 2000® Index and the Russell 3000® Index, effective March 16, 2018, as part of Russell's quarterly additions of companies with recent initial public offerings.

Russell indices are widely used by investment managers and institutional investors for both index funds and as benchmarks for passive and active investment strategies in the U.S. marketplace.

The Russell 3000® Index measures the performance of the largest 3,000 U.S. companies, representing approximately 98% of the investable U.S. equity market. The Russell 2000® Index measures performance of the small-cap segment of the U.S. equity market and is a subset of the Russell 3000® Index.

Venkat S. Meenavalli, Chairman and CEO of Longfin, says "We are pleased that Longfin is included in the Russell 2000® Index. We believe that this inclusion reflects the stockholder value we are building and will help increase Longfin's visibility within the investment community."

30.     The statements referenced in ¶¶25, 27, and 29 were materially false and misleading because Defendants failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  More specifically, Defendants' statements were false and misleading at the time that they were made because: (i) Defendants had misrepresented material facts concerning Longfin's business and operations, including the extent of its capabilities at its New York offices and the identity and qualifications of key employees; (ii) Longfin had material weaknesses in its operations and internal controls over financial reporting; (iii) Longfin was ineligible for inclusion in the Russell indices; and (iv) Longfin suffered financial losses which imperiled its ability to continue as a going concern.

31.     Due to the foregoing, Defendants' statements regarding Longfin's business, operations, and prospects were materially false and misleading at all relevant times.

### The Truth Emerges in Stages

32.     On March 26, 2018, market commentator, Citron, used its Twitter account to post the following statement accusing Longfin of inaccuracies in its financial reporting and fraud: "If you are fortunate enough to get a borrow, indeed $LFIN is a pure stock scheme. @sec_enforcement should not be far behind.  Filings and press releases are riddled with inaccuracies and fraud."

33.     The same day, Russell issued a statement entitled "Longfin Corp (USA): Constituent Deletion Changes in Russel Global Index Series," which stated:

Longfin (USA, constituent) was included as an IPO in the Russell 2000 index at the March quarterly update on the basis of its IPO filing of 3 November 2017 which stated that up to 10,000,000 Class A common shares would be offered. Subsequently, an SEC filing published on 13 February 2018, immediately prior to the Russell US Index rank date of 14 February 2018 for the quarterly IPO additions, confirmed that up to a maximum of 1,140,000 of the shares offered had been taken up by the public. Consequently FTSE Russell has determined that Longfin failed to meet the minimum 5% free float requirement as at the 14 February rank date. In accordance with the FTSE Russell Recalculation Policy and Guidelines, Longfin will therefore be removed from the Russell Indexes on 28 March 2018 (after the close).

34.     On this news, Longfin's stock price declined from $59.28 per share on March 26, 2018 to close at $34.68 per share on March 27, 2018, a decline of more than 41%, on abnormally large volume.

35.     On March 27, 2018, *CNBC* published an article entitled "Longfin loses more than a third of its value after the controversial cryptocurrency stock is booted from the Russell 2000 index."  In this article, Meenavalli was quoted as threatening "legal action" against Citron for its negative commentary.

36.     On this news, Longfin's stock price declined from $34.68 per share on March 27, 2018 to close at $17.26 per share on March 29, 2018, a decline of more than 50%, on abnormally large volume.

37.     After market close, on April 2, 2018, Longfin filed its 2017 10-K, which revealed, *inter alia*, that Longfin: (i) had material weakness in its internal control over financial reporting; (ii) was the subject of an SEC investigation concerning its initial public offering and acquisition of Ziddu; and (iii) may not be able to continue as a going concern.  The 2017 10-K stated, in relevant part:

> *We have identified several material weaknesses in our internal control over financial reporting. If our planned remediation of these material weaknesses is not effective, or if we experience additional material weaknesses in the future or otherwise fail to maintain an effective system of internal control*

*over financial reporting in the future, we may not be able to accurately or timely report our financial condition or results of operations, which may adversely affect investor confidence in us and, as a result, the value of our securities.*

In connection with the audit of our financial statements beginning on page F-1, the Company identified several material weaknesses in its internal control over financial reporting. A material weakness is defined as a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's financial statements will not be prevented or detected on a timely basis. Below are the material weaknesses identified:

- the Company lacks qualified personnel who fully understand GAAP reporting requirements, possess appropriate skills to identify and determine proper accounting for new, complex or unusual transactions or have a proficiency in the SEC reporting environment;

- the Company did not maintain sufficient personnel with the technical knowledge and skills to perform accounting functions for complex/nonrecurring transactions and financial reporting functions;

- the Company exhibited an overall lack of sufficient knowledge, organized and sufficient audit support, documented positions and assessments, and policies/procedures related to the accounting treatment for both complex and non-complex transactions;

- certain segregation of duties issues exist (i.e., the same person performs the process and the control in certain areas);

- the Company does not have any formal or documented accounting policies and procedures, including with respect to intangible assets and monitoring related parties;

- senior financial reporting personnel have the ability to make journal entries; and

- there is no formal review process around journal entries recorded.

Neither we nor our independent registered public accounting firm has performed an evaluation of our internal control over financial reporting in accordance with Section 404 of the Sarbanes-Oxley Act. In light of the material weaknesses that were identified, we believe that it is possible that additional material weaknesses and control deficiencies may have been identified if such an evaluation had been performed.

The Company is working to remediate the material weaknesses, has taken steps to enhance the internal control environment, and plans to take additional steps to remediate the material weaknesses. Specifically, we will:

- seek technically competent staff with appropriate experience applying GAAP accounting guidance and are currently utilizing a consultant with US GAAP/SEC experience to assist with financial reporting requirements;

- design additional controls around identification, documentation and application of technical accounting guidance; implement additional internal reporting procedures, including those designed to add depth to the review processes and improve segregation of duties; and

- restructur[e] internal controls to eliminate or improve known control issues.

The actions that we are taking are subject to ongoing senior management review as well as audit committee oversight. Although we plan to complete this remediation process as quickly as possible, we cannot at this time estimate how long it will take, and our efforts may not be successful in remediating these material weaknesses. In addition, we will incur additional costs in improving our internal control over financial reporting. If we are unable to successfully remediate these material weaknesses or if we identify additional material weaknesses, we may not detect errors on a timely basis. This could harm our operating results, cause us to fail to meet our SEC reporting obligations or NASDAQ Capital Market listing requirements on a timely basis, adversely affect our reputation, cause our stock price to decline or result in inaccurate financial reporting or material misstatements in our annual or interim financial statements.

In addition to the remediation efforts related to the material weaknesses described above, we are in the process of designing and implementing the internal control over financial reporting required to comply with Section 404 of the Sarbanes Oxley Act. This process will be time consuming, costly and complicated. If during the evaluation and testing process, we identify one or more other material weaknesses in our internal control over financial reporting, our management will be unable to assert that our internal control over financial reporting is effective. Even if our management concludes that our internal control over financial reporting is effective, our independent registered public accounting firm may conclude that there are material weaknesses with respect to our internal controls or the level at which our internal controls are documented, designed, implemented or reviewed. If we are unable to assert that our internal control over financial reporting is effective, or when required in the future, if our independent registered public accounting firm is unable to express an opinion as to the effectiveness of our internal control over financial reporting, investors may lose confidence in the accuracy and completeness of our financial reports and the market price of our securities could be adversely affected, and we could become subject to investigations by the stock exchange on which our securities are listed, the SEC, or

other regulatory authorities, which could require additional financial and management resources.

* * *

## Going Concern

The Company has limited operating history and experienced a net loss of $26.4 million since its inception. The Company has $2.1 million of cash at December 31, 2017. The Company operates primarily in structured trade finance and providing technology services and our operating costs are primarily related to the cost of providing those services, employee compensation and administrative expenses.

On January 22, 2018, pursuant to a Securities Purchase Agreement ("SPA") entered into by an institutional investor (the "Investor"), the Company agreed to sell and issue (1) (i) Senior Convertible Notes to the Investor in the aggregate principal amount of $52,700,000 (each, a "Note" and collectively, the "Notes"), consisting of a Series A Note in the principal amount of $10,095,941 and (ii) a Series B Note in the principal amount of $42,604,059, and (2) a warrant to purchase 751,894 shares of Longfin Class A Common Stock, exercisable for a period of five years at an exercise price of $38.55 per share (the "Warrant"), for consideration consisting of (i) a cash payment of $5,000,000, and (ii) a secured promissory note payable by the Investor to Longfin (the "Investor Note") in the principal amount of $42,604,059 (collectively, the "Financing"). On February 13, 2018, the Company completed the Financing and related sale and issuance of the Notes, the Warrant and a placement agent warrant. The maturity date of the Notes is August 13, 2019 and the Investor Note is February 13, 2048. To date, the Company has received $3.7 million in net proceeds ($5.0 million net of costs of $1.3 million) related to the Financing and will not be able to obtain additional monies through the Financing until the Company files a Registration Statement to register the common shares underlying the Notes and Warrant and such Registration Statement is declared effective by the Securities and Exchange Commission or such shares are eligible for resale pursuant to Rule 144 under the Securities Act, or the investor elects to convert or exercise such securities notwithstanding the underlying shares have not been so registered or are then so eligible.

***The continuation of the Company as a going concern is dependent upon the ability of the Company to obtain the monies from the Financing and the attainment of profitable operations.*** These factors, which are not within the Company's control, raise substantial doubt regarding the Company's ability to continue as a going concern. Although it is actively working on obtaining the additional funding pursuant to the Financing, the Company cannot make any assurances that the additional monies will be available to it and, if available, on a timely basis. If the Company is unable to obtain the monies from the Financing, it would negatively impact its business and operations and could also lead to the reduction or suspension of the Company's operations and ultimately force the

Company to cease operations. These financial statements do not include any adjustments to the recoverability and classification of recorded asset amounts and classification of liabilities that might be necessary should the Company be unable to continue as a going concern.

* * *

*Legal Matters*

The Company is and may become subject to certain legal proceedings and claims arising in connection with the normal course of its business. In the opinion of management, there are currently no claims that would have a material adverse effect on its consolidated financial position, results of operations or cash flows. On March 5, 2018, the Division of Enforcement of the SEC informed the Company that it is conducting an investigation In the Matter of Trading in the Securities of Longfin Corp. and requested that the Company provide certain documents in connection with its investigation, including documents related to our IPO and other financings and the acquisition of Ziddu.com. The Company is in the process of responding to this document request and will cooperate with the SEC in connection with its investigation. While the SEC is trying to determine whether there have been any violations of the federal securities laws, the investigation does not mean that the SEC has concluded that anyone has violated the law. Also, the investigation does not mean that the SEC has a negative opinion of any person, entity or security.

(Emphasis added).

38.     Also on April 2, 2018, the *Wall Street Journal*, published an article entitled "Up-and-Down IPO Longfin Is Facing an SEC Probe."  This article stated that Longfin had "failed to disclose important information and left a trail of misstatements behind," which ultimately led to the SEC's investigation.  Additionally, the article revealed various misrepresentations regarding Longfin and its financial filings, including the identity of key employees, the extent of operations at its downtown Manhattan principal offices, and even Meenavalli's age.

39.     On this news, the price of Longfin's stock declined from $14.31 per share on April 2, 2018 to close at $9.89 per share on April 3, 2018, a decline of more than 30%, on abnormally large trading volume.

40.     Shortly thereafter, on April 6, 2018, the SEC announced that it had obtained a court order freezing more than $27 million in trading proceeds from allegedly illegal distributions and sales of restricted Longfin stock involving the Company, its CEO and three other affiliated individuals.  This press release stated, in relevant part:

> According to a complaint unsealed today in federal court in Manhattan, shortly after Longfin began trading on NASDAQ and announced the acquisition of a purported cryptocurrency business, its stock price rose dramatically and its market capitalization exceeded $3 billion. The SEC alleges that Amro Izzelden "Andy" Altahawi, Dorababu Penumarthi, and Suresh Tammineedi then illegally sold large blocks of their restricted Longfin shares to the public while the stock price was highly elevated. Through their sales, Altahawi, Penumarthi, and Tammineedi collectively reaped more than $27 million in profits.
>
> According to the SEC's complaint, Longfin's founding CEO and controlling shareholder, Venkata Meenavalli, caused the company to issue more than two million unregistered, restricted shares to Altahawi, who was the corporate secretary and a director of Longfin, and tens of thousands of restricted shares to two other affiliated individuals, Penumarthi and Tammineedi, who were allegedly acting as nominees for Meenavalli. The subsequent sales of those restricted shares violated federal securities laws that restrict trading in unregistered shares distributed to company affiliates.
>
> "We acted quickly to prevent more than $27 million in alleged illicit trading profits from being transferred out of the country," said Robert Cohen, Chief of the SEC Enforcement Division's Cyber Unit. "Preventing Defendants from transferring this money offshore will ensure that these funds remain available as the case continues."
>
> The SEC's complaint, which was filed under seal on April 4, charges Longfin, Meenavalli, Altahawi, Penumarthi, and Tammineedi with violating Section 5 of th Securities Act of 1933. The complaint seeks injunctive relief, disgorgement of illgotten gains, and penalties, among other relief.

41.     On this news, Longfin's stock price declined more than 86% from its Class Period high.

42.     Also on April 6, 2018, the NASDAQ announced that trading of Longfin's stock had been halted in a press release entitled "Nasdaq Halts Longfin Corp."  The press release stated:

> The Nasdaq Stock Market® (Nasdaq:NDAQ) announced that trading was halted today in Longfin Corp. (Nasdaq:LFIN) at 10:01:38 Eastern Time for "additional information requested" from the company at a last sale price of $28.189.
>
> Trading will remain halted until Longfin Corp. has fully satisfied Nasdaq's request for additional information.

43.     Longfin investors had minimal time to react to the announcement of the SEC action against Longfin and the NASDAQ's announcement halting LFIN's trading and, thus, many investors were unable to exit their positions prior to the halt.

44.     After the April 6 trading halt, there was no market for Longfin stock until May 24, 2018 -- when the stock began trading on the OTC and was officially delisted from the NASDAQ.

45.     By the time investors could sell their Longfin stock on the OTC, it had declined over 92% from its Class Period high, causing economic losses and damages to Plaintiff and the Class that are actionable under the federal securities laws.

## SCIENTER ALLEGATIONS

46.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents in violation of the federal securities laws.  As set forth herein, Defendants, by virtue of their possession of information reflecting the true facts regarding Longfin, their control over, and/or receipt and/or modification of Longfin's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Longfin, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION

47.     During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Longfin's securities and operated as a fraud or deceit on Class Period purchasers of Longfin securities by materially misleading the investing public.  Later, as the truth about the misleading statements and omissions which artificially inflated the price of Longfin stock was laid bare to the market over time,, the price of Longfin's securities fell precipitously.  As a result of their purchases of Longfin securities during the Class Period, Plaintiff and other members of the Class suffered economic loss—*i.e.*, damages—under the federal securities laws.

## APPLICATION OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

48.     At all relevant times, the market for Longfin securities was an efficient market for the following reasons, among others: (i) Longfin common stock was listed and actively traded on the NASDAQ, a highly efficient and automated market; (ii) Longfin filed periodic public reports with the SEC and the NASDAQ; and (iii) Longfin regularly communicated with public investors via established communication mechanisms, including regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

49.     As a result of the foregoing, the market for Longfin securities promptly digested current information regarding Longfin from all publicly available sources and reflected such information in Longfin's stock price.  Under these circumstances, all purchasers of Longfin securities during the Class Period suffered similar injury through their purchase of Longfin's securities at artificially inflated prices, and a presumption of reliance applies.

50.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures.  Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.  Here, the facts withheld were material because an investor would, in making a decision(s) to purchase and/or sell stock in Longfin, have considered the Company's capabilities at its New York Offices, the identity and qualifications of key employees, the fact that it had material weaknesses in Longfin'its operations and internal controls over financial reporting, that Longfin was ineligible for inclusion in the Russell indices, and that Longfin's lack of profitability had imperiled its ability to continue as a going concern to have affected their decisions as to whether to purchase and/or sell stock in Longfin.

51.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading,

18

and/or the forward-looking statement was authorized or approved by an executive officer of Longfin who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

52.      Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities who purchased or otherwise acquired Longfin securities during the Class Period.  Excluded from the Class are Defendants and other officers and directors of the Company, at all relevant times, as well as members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which one or more Defendant has or had a controlling interest.  The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Longfin's stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Upon information and belief, these shares are held by thousands of individuals located geographically throughout the country and possibly the world.  Joinder would be highly impracticable.  Record owners and other members of the Class may be identified from records maintained by Longfin or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

53.      Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct in a substantially identical manner.

54.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

55.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members, include whether: (i) the Exchange Act was violated by Defendants; (ii) Defendants omitted and/or misrepresented material facts in their publicly disseminated reports, press releases, and statements during the Class Period; (iii) Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (iv) Defendants participated and pursued the fraudulent scheme or course of business complained of herein; (v) Defendants acted purposefully, knowingly, or recklessly in omitting and/or misrepresenting material facts; (vi) the price of Longfin's securities was artificially inflated during the Class Period as a result of the material nondisclosures and/or misrepresentations complained of herein; and (vii) the members of the Class have sustained damages as a result of the decline in value of Longfin's securities when the truth was revealed, and if so, what the appropriate measure of damages is.

56.     Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.  Plaintiff has no interests antagonistic to or conflicting with those of the Class.  Plaintiff anticipates that there will be no difficulty in the management of this litigation.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

# CLAIMS FOR RELIEF

## COUNT I

### Violation of Section 10(b) of
### the Exchange Act and SEC Rule 10b-5
### (Against All Defendants)

58. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

59. This Count is asserted by Plaintiff on behalf of himself and the Class against all the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

60. During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Longfin's securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Longfin's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants took the actions set forth herein.

61. Defendants, by the use of means and instrumentalities of interstate commerce: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers and acquirers of the Company's securities in an effort to maintain artificially high market prices for Longfin's securities in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

62. As a result of their making and/or substantial participation in the creation of affirmative statements and reports to the investing public, Defendants had a duty to promptly

disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S-K (17 C.F.R. § 229.10, *et seq.*) and other SEC regulations, including accurate and truthful information with respect to the Company's operations and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete, and accurate information. Defendants' material misrepresentations and omissions as set forth herein violated that duty.

63. Defendants engaged in the fraudulent activity described above knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff and the Class. Defendants knowingly or recklessly caused their reports and statements to contain misstatements and omissions of material fact as alleged herein.

64. As a result of Defendants' fraudulent activity, the market price of Longfin's stock was artificially inflated during the Class Period.

65. In ignorance of the true financial condition of Longfin, Plaintiff and other members of the Class, relying on the integrity of the market and/or on the statements and reports of Longfin containing the misleading information, purchased or otherwise acquired Longfin's securities at artificially inflated prices during the Class Period.

66. Plaintiff and the Class' losses were proximately caused by Defendants' active and primary participation in Longfin's scheme to defraud the investing public by, among other things, failing to fully and accurately disclose to investors adverse material information regarding the Company. Plaintiff and other members of the Class purchased Longfin's securities in reliance on the integrity of the market price of these securities, and Defendants manipulated the price of Longfin's securities through their misconduct as described herein. Plaintiff and the Class' losses

were a direct and foreseeable consequence of Defendants' concealment of the true financial condition of Longfin.

67.    Throughout the Class Period, Defendants were aware of material nonpublic information concerning Longfin's fraudulent conduct (including the false and misleading statements described herein).  Throughout the Class Period, Defendants willfully and knowingly concealed this adverse information, and Plaintiff and the Class' losses were the foreseeable consequence of Defendants' concealment of this information.

68.    As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of Longfin's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act
### (Against the Individual Defendants)

69.    Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

70.    During the Class Period, the Individual Defendants were privy to nonpublic information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, and attendance at management and Board of Directors meetings and committees thereof and review of reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.  Plaintiff and other members of the Class had no access to such information, which was, and remains, solely under the control of the Defendants.

71.     The Individual Defendants were involved in drafting, producing, reviewing, and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware (or recklessly disregarded) that materially false and misleading statements were being issued by the Company and nevertheless approved, ratified, and/or failed to correct those statements in violation of federal securities laws.  Throughout the Class Period, the Individual Defendants were able to, and did, control the contents of the Company's SEC filings, reports, press releases, and other public statements.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed such filings, reports, releases, and other statements prior to or shortly after their issuance and had the ability or opportunity to prevent their issuance or to cause them to be corrected.

72.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Longfin's business, the information contained in its filings with the SEC, and its public statements.  Moreover, the Individual Defendants made or directed the making of affirmative statements to securities analysts and the investing public at large, and participated in meetings and discussions concerning such statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading.  As a result, the Individual Defendants are responsible for the accuracy of Longfin's corporate releases detailed herein and are therefore responsible and liable for the misrepresentations contained herein.

73.     The Individual Defendants acted as controlling persons of Longfin within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions with the Company,

the Individual Defendants had the power and authority to cause Longfin to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Longfin and all of its employees. As alleged above, Longfin is a primary violator of Section 10(b) of the Exchange Act and SEC Rule 10b-5. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

74. As a direct and proximate result of the wrongful conduct of Longfin and the Individual Defendants, Plaintiff and members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as the Class representative and his counsel as Class Counsel;

B. Awarding Plaintiff and the Members of the Class damages, including interest;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.


Dated: June 4, 2018                              **LEVI & KORSINSKY, LLP**

                                        By:      /s/ *Christopher J. Kupka*
Donald J. Enright                                Christopher J. Kupka (CK-9010)
Elizabeth K. Tripodi                             30 Broad Street, 24th Floor
John A. Carriel                                  New York, New York 10004
1101 30th Street N.W., Suite 115                 T. 212.363.7500
Washington, DC 20007                             F. 212.363.7171
Telephone: (202) 524-4290                        ckupka@zlk.com
Facsimile: (202) 333-2121

                                        *Attorneys for Plaintiff Mohammad Malik*